# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

JUNE 1997 SESSION



**FILED**

**OCTOBER 31, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **RANDY L. MILLER,** | ) | |
| | ) | |
| Appellant, | ) | C.C.A. No. 03C01-9608-CC-00323 |
| | ) | |
| vs. | ) | Anderson County |
| | ) | |
| **STATE OF TENNESSEE,** | ) | Honorable James B. Scott Jr., Judge |
| | ) | |
| Appellee. | ) | (Aggravated Assault) |
| | ) | |

FOR THE APPELLANT:

A. PHILIP LOMANACO
Attorney at Law
112 Durwood Drive
Knoxville, TN 37922

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

JAMES N. RAMSEY
District Attorney General

JANICE G. HICKS
Assistant District Attorney General
127 Anderson County Courthouse
Clinton, TN 37716

OPINION FILED: _____


**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

CURWOOD WITT
JUDGE

**OPINION**

The defendant, Randy L. Miller, appeals his convictions of six counts of aggravated assault and the six year incarcerative sentence he received for his crimes. The defendant, a truck driver, received these convictions in the Anderson County Criminal Court, following a shooting altercation between himself and a van-load of travelers on Interstate 75. In his direct appeal, the defendant raises two issues for our consideration.

> 1. Whether the court erred by refusing to charge the lesser grade of aggravated assault, or, in the alternative, did the state produce sufficient evidence to find Miller guilty of six separate aggravated assaults each done intentionally or knowingly?
>
> 2. Whether the court properly applied three enhancement factors.

On our review of the record, we affirm the defendant's convictions of aggravated assault of Paul S. Green, Dedra Green and Shannon Ullery and affirm the defendant's sentences for those convictions, and we remand these convictions to the trial court for correction of a technical aspect of the record. On the other hand, we reverse the defendant's convictions of aggravated assault of Paul Green,[1] Kirstie Green and Sarah Green and remand for a new trial.

On June 10, 1995, Miller was returning to his home state of Georgia via Interstate 75 in Anderson County in a tractor-trailer truck. The six victims, Paul S. and Dedra Green, their three minor children, Paul, Kirstie, and Sarah, and their 19 year old friend Shannon Ullery were traveling from Ohio to Georgia in the Greens' van on Interstate 75. The Greens had a citizens' band (CB) radio in their van, and Mr. Green had been on the radio joking and belching with various truck drivers. Apparently, the talk was somewhat antagonistic. According to Mr. Green, himself a truck driver, the conversation was not out of character for that in which truck drivers generally engage on CBs. At various times, the adults in the van heard

_____

[1]Paul S. Green is an adult. Paul Green is a minor.

**2**

an individual who was yelling and cursing. At first, this voice sounded far away, and Mr. Green and the other participants to the conversation ignored him. A truck driver told the speaker he was not involved in the conversation, which only antagonized him. Later, the voice threatened that if they did not shut up, he would shut them up permanently and that he would run them off the road. Mr. Green identified the voice he heard on the CB radio as belonging to the defendant.

According to the Greens and Ms. Ullery, after the defendant threatened to run them off the road, he came up behind them in the left lane, and Mr. Green moved into the right lane. The defendant passed them, then forced them off the road onto the right shoulder. Mr. Green pulled back onto the road, and the defendant was in front of them. Mrs. Green testified she was incensed and grabbed the microphone and said, "You son of a bitch, I have three babies in here. What the hell do you think you're doing? I ought to kick your ass." The defendant slammed on his brakes so hard that the victims could see smoke from his tires. Mr. Green then attempted to go around the defendant's truck to get the identification numbers off his tractor so he could report the defendant to his employer. As the Greens' van approached the front of the truck, Mrs. Green noticed the defendant had a gun. Then the van windows disintegrated as several gunshots were fired. Mrs. Green was grazed with a bullet to her back, causing non-life threatening injury. As the van and truck traveled on, Mr. Green saw a police cruiser with flashing lights in a construction area. He pulled in and alerted the officer. The defendant arrived shortly thereafter and accused Mr. Green of shooting at him.

Searches of the defendant's truck cab revealed no weapons. A .9mm semi-automatic handgun was found in the glove box of the Greens' van. Gunshot residue tests of the defendant's hands were inconclusive. A firearms expert from the Tennessee Bureau of Investigation Crime Lab testified a mirror taken from the

driver's side of the defendant's truck had damage consistent with damage from a projectile fired from a gun within 36 inches. The damaged area was caused by a projectile traveling right to left.

The defendant claimed he had heard several individuals using profanity, belching and insulting others on his CB radio. He conceded he may have inadvertently run the van off the road when he passed it, but he thought he was clear of it. After this happened, he said a woman's voice came on the radio and said, "You're dead MF," and a man's voice said, "I'm going to kill you, son of a bitch." He looked in his rear-view mirror and saw the Greens' van. He could see the driver, whom he could not identify, leaning over and then holding up a handgun. He alleged he began braking to keep the driver from having a clear shot at him, and as the van passed him his mirror was shot. He testified he did not have a gun. He identified the gun taken from the Greens' van as looking like the gun he saw. The defendant also testified he saw only two people in the van.

The defendant also presented two character witnesses at trial who testified to his reputation for truthfulness.

The defendant requested jury instructions on the lesser grade offense of reckless aggravated assault, but the court declined the request. The jury found the defendant guilty of six counts of aggravated assault. During deliberations, the jury reported difficulty reaching a verdict on four of the six counts. The foreperson reported guilty verdicts for the counts pertaining to Paul and Dedra Green, and after further deliberation the jury returned guilty verdicts for the counts relating to Shannon Ullery and the Green children.

In an apparent attempt to throw himself on the mercy of the court, the

4

defendant took the stand at the sentencing hearing and admitted he committed perjury at trial. He apologized to the state, the court and the victims for his dishonesty. He admitted he shot at the Greens, although he maintained Mr. Green pulled a gun and fired on him, and he shot in self-defense. The defendant claimed he previously lied under oath because he was scared. He claimed to have disposed of all the guns he and his wife owned. He reported he quit his job as a truck driver and would never drive a truck again. Unpersuaded, the court sentenced the defendant to six years for each count, the maximum for a Range I offender, the six sentences to be served concurrently. The court rejected the defendant's bid for probation and ordered he serve his time in the Department of Correction.

## I

In his first appellate issue, the defendant alleges the trial court erred in failing to instruct the jury on the lesser grade offense of reckless aggravated assault. Alternatively, he argues the evidence is insufficient to convict him of aggravated assault of Shannon Ullery and the three Green children, based upon insufficient evidence of a knowing or intentional mental state. The state counters there was no proof the defendant acted recklessly; his defense was he did not shoot at the victims. In this absence of evidence the defendant is guilty of the lesser offense, the state argues, the court did not err in declining to instruct the jury on the lesser grade offense.

A trial court has the duty, sua sponte, to instruct the jury on all lesser grade or class offenses and lesser included offenses, provided the evidence would support a conviction for the lesser offenses. Tenn. Code Ann. § 40-18-110 (1990); State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); see Tenn. R. Crim. P. 31(c).

Under the statutory scheme, reckless aggravated assault is a lesser

5

grade offense of aggravated assault. See Tenn. Code Ann. § 39-13-102(b) (Supp. 1995) (amended 1996); Trusty, 919 S.W.2d at 310-11 (distinguishing between lesser grade and lesser included offenses); State v. Donald W. Brantley, No. 01C01-9508-CC-00255, slip op. at 7 (Tenn. Crim. App., Nashville, March 13, 1997) (Hayes, J., concurring), pet. for perm. app. filed (Tenn. May 13, 1997). Thus, the trial court had a duty to instruct the jury on reckless aggravated assault if the evidence would support a conviction of that crime. See Trusty, 914 S.W.2d at 488.

The relevant statutory provisions define reckless aggravated assault as resulting where a person "[r]ecklessly commits an assault *as defined in § 39-13-101(a)(1)*, and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(2) (Supp. 1996) (italics added). Section 39-13-101(a)(1) inculpates "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another[.]" Tenn. Code Ann. § 39-13-101(a)(1) (1991).

In the case at bar, there was no evidence Paul S. Green or Shannon Ullery received any bodily injury, as required under section 39-13-101(a)(1). On the other hand, there was uncontested evidence Dedra Green received bodily injury when she was grazed by a bullet, and there was conflicting evidence whether the Green children received minor scratches from shattering glass. Because reckless aggravated assault must involve some degree of bodily injury, a conviction of that crime may be found only as to those victims who are alleged to have been injured. In other words, the evidence would not support a conviction of reckless aggravated assault of Paul S. Green and Shannon Ullery. The trial court had no basis for instructing the jury on reckless aggravated assault as to these victims.

With respect to the child victims, the defendant contends he was entitled to a jury instruction on reckless aggravated assault on the counts pertaining

**6**

to these victims because the state failed to prove beyond a reasonable doubt he was aware of their presence in the van. Thus, he argues, he could not have intentionally or knowingly assaulted them. The defendant alleged at trial he saw only two people in the front seat of the van. To the contrary, the state offered proof Mrs. Green got on the CB radio and told the defendant she had "three babies" in the van prior to the gunfire. The defendant denied hearing this statement. The evidence could support a finding of reckless aggravated assault of the children if the jury accredited the testimony of the defendant that he was aware of only two people in the van and never heard Mrs. Green say she had three babies in the van. We believe the trial court committed reversible error in failing to charge the jury on the lesser offense of reckless aggravated assault as to the three counts of the indictment pertaining to the children.[2]

Finally, with respect to the trial court's failure to instruct the jury on reckless aggravated assault of Dedra Green, the record is devoid of any evidence

---

[2]The question we find determinative is not whether the evidence presented at trial was sufficient to sustain the defendant's convictions of aggravated assault; it is whether the jury was properly instructed on all crimes of which the defendant might properly be found guilty. As this court has noted in the past,

> In effect, the trial court must consider the evidence in the light most favorable to the existence of the lesser included offense and if the evidence so considered permits an inference of guilt of a lesser offense, the trial court must give instructions as to the lesser offense. Otherwise, the trial court's consideration of the evidence runs the risk of invading the province of the jury relative to witness credibility, the weight and sufficiency of the evidence, and the degree of the offense, if any, to be sustained.

State v. Brooks, 909 S.W.2d 854, 861 (Tenn. Crim. App. 1995). In the end, it may well be that the defendant will be found guilty of aggravated assault after the jury has been instructed on remand on both aggravated assault and reckless aggravated assault, and the evidence will be sufficiently supported by the record if this matter is thereafter reviewed by this court. Nonetheless, the defendant is entitled to have the question of his guilt of both aggravated assault and reckless aggravated assault before the jury, provided the evidence presented on remand supports an inference of his guilt of either crime.

his conduct toward her constituted mere recklessness. The defendant admitted he saw two people in the front of the van. Mrs. Green was sitting in the front passenger seat. According to the state's theory, the defendant threatened to run the van off the road, then proceeded to do just that. The defendant admitted he may have accidentally run the van off the road. When the van returned to the road and attempted to pass the defendant, he shot at the van. Clearly, the latter rises to the level of intentional or at least knowing conduct. The defendant offered no evidence he recklessly shot at the van, choosing instead to challenge that the events occurred at all. In the absence of any evidence of reckless conduct directed to Dedra Green, the court did not err in failing to instruct the jury on reckless aggravated assault of this victim.

In reaching these conclusions, we have considered and rejected the state's argument the trial court was excused from instructing the jury on reckless aggravated assault under the rule espoused in State v. Barker, 642 S.W.2d 735 (Tenn. Crim. App. 1982). In Barker, this court held that the trial court had no obligation to instruct the jury on lesser included offenses where the defendant did not contest the occurrence of the crime but merely interposed an alibi defense. Barker, 642 S.W.2d at 738 (citing Price v. State, 589 S.W.2d 929 (Tenn. Crim. App. 1979); Judge v. State, 539 S.W.2d 340 (Tenn. Crim. App. 1976)). Unlike the defendant in Barker, the defendant before us challenged whether the crimes themselves occurred.[3] His evidence attempted to show the events occurred differently than as illustrated by the state's proof and that no crimes were committed. The jury had to determine not only whether the defendant committed

---

[3]The defendant's subsequent admission at the sentencing hearing that he shot at the Greens' van technically is not part of the evidence we can consider in determining whether the jury was properly instructed, in that the admission did not occur at trial. We note parenthetically, however, the defendant never contradicted his trial testimony that he had not seen or otherwise been aware of the presence of more than two people in the van.

8

the crimes, but whether any crimes occurred at all. Accordingly, we reject Barker as dispositive of the case at bar.

The defendant argues in the alternative the evidence is insufficient to support convictions of aggravated assault of Shannon Ullery and the three children based upon an inadequate showing he possessed the requisite intentional or knowing mental state at the time of the crimes. Our standard of review as to sufficiency questions is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). When undertaking such review, we are constrained to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In the light most favorable to the state, the defendant threatened to run the Greens' van off the road, did so, then shot into the occupied van while traveling down the interstate. The defendant admitted seeing two people in the van, and Mrs. Green warned him there were children in the van. Ms. Ullery testified she was sitting in the center of the middle seat, where she could see out between the two front seats. Whether the defendant was aware of Ms. Ullery's presence is essentially a question of the defendant's credibility. The jury could logically conclude beyond a reasonable doubt the defendant knew Ms. Ullery was in the van and intentionally or knowingly caused her to fear bodily injury, as charged in the indictment. Likewise, whether the defendant saw the children or heard Mrs. Green's warning there were three children in the van is essentially a credibility question, and

**9**

a rational jury could resolve this question in favor of the state by finding beyond a reasonable doubt that the defendant's actions were intentional or knowing as to the children.

In the defendant's challenge to the sufficiency of the evidence, he has not directly questioned Ullery's and the child victims' reasonable fear of imminent bodily injury, and we find the record contains sufficient evidence of this element as to these victims. Ullery testified she lay down in the seat and pushed the children down in their seat once she became aware the defendant had a gun. Several windows on the van were shattered by the defendant's gun blasts. The children had shattered glass in their hair, and they received minor cuts and scratches from the glass. A rational jury could infer these victims' reasonable fear of imminent bodily injury from these facts. Accordingly, we find the evidence sufficiently supports the jury's findings of guilt as to Ullery and the child victims.[4]

## II

The defendant's second issue is whether the trial court properly relied on three enhancement factors. The enhancement factors found by the court were "the offense involved more than one victim[,]" "a victim of the offense was particularly vulnerable because of age or physical or mental disability[,]" and "the defendant had no hesitation about committing a crime when the risk to human life was high[.]" Tenn. Code Ann. § 40-35-114(3), (4) and (10) (1990). The state has conceded the inapplicability of the three factors but argues a maximum sentence is nevertheless appropriate for this defendant because another enhancement factor,

---

[4]As noted previously, however, the defendant's convictions of aggravated assault as to the three child victims are infirm due to the lower court's failure to submit the lesser grade offense of reckless aggravated assault to the jury. Thus, notwithstanding our finding of sufficient evidence of the greater offense, we have vacated and remanded these three convictions for a new trial.

"the crime was committed under circumstances under which the potential for bodily injury to a victim was great," applies even though it was not relied on by the trial court. See Tenn. Code Ann. § 40-35-114(16) (1990).

When a defendant challenges the sentence imposed by the trial court, this court engages in a de novo review of the record with a presumption the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (1990); Ashby, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1990); Ashby, 823 S.W.2d at 169.

The record in this case fails to demonstrate that the trial court gave appropriate consideration to the principles of sentencing as well as the relevant facts and circumstances. Accordingly, our review is de novo unaccompanied by the presumption of correctness.

With respect to the length of the three aggravated assault sentences, we find two enhancement factors applicable to the defendant. First, we disagree with the state's concession that factor (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high[,]" does not apply. See Tenn. Code Ann. § 40-35-114(10) (Supp. 1996). Second, factor (16), "[t]he crime[s

**11**

were] committed under circumstances under which the potential for bodily injury to a victim was great[,]" applies. See Tenn. Code Ann. § 40-35-114(16) (Supp. 1996). We acknowledge the general rule that these factors are inherent in the crime of aggravated assault accomplished through the use of a deadly weapon. See, e.g., State v. Hill, 885 S.W.2d 357, 363-64 (Tenn. Crim. App. 1994). We have previously recognized, however, that these factors may be applied "if the facts demonstrate a culpability distinct from and appreciably greater than that incident to the convicted offense." State v. Gregory Muse, No. 03C01-9508-CC-00212, slip op. at 5-6 (Tenn. Crim. App., Knoxville, Sept. 17 1996), perm. app. granted on other grounds (Tenn. Mar. 17, 1997); see State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994). This case presents a situation which is appropriate for application of the exception, rather than the rule. The defendant unhesitatingly endangered the victims with gun shots, the basis for the convictions, but he also unhesitatingly endangered them by creating a situation in which there was substantial risk of their van wrecking, whether as a result of the defendant's shooting at the driver and the windows or running the van off the road. We believe the latter layer of risk of a wreck, which was not essential to the convictions, justifies the application of enhancement factors (10) and (16). Moreover, we find the nature and characteristics of the criminal conduct in this case justify giving these two enhancement factors great weight. See State v. George E. Martin, Jr., No. 02C01-9512-CC-00389, slip op. at 14 (Tenn. Crim. App., Jackson, Aug. 18, 1997) (circumstances of offense may be considered in determining appropriate weight to be given to enhancement factors). In fact, we believe these two enhancement factors justify maximum Range I sentences of six years for the defendant's three convictions. We find evidence of no mitigating factors on the record before us, and the defendant has not argued that any apply to him.[5]

---

[5]The record before us does not include the victim impact statement appended to the presentence report. On the particular facts of this case,

Next, we turn to the issue of the manner of service of this sentence. Having received a sentence of less than eight years, the defendant is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1990). Moreover, he is eligible for probation. See Tenn. Code Ann. § 40-35-303(a) (Supp. 1996). Curiously, he has devoted no argument in his brief to the proposition he should receive probation or some other form of alternative sentencing, rather than confinement. In any event, we have serious concern about the defendant's potential for rehabilitation in light of his perjury at trial.[6] See State v. Dowdy, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994); see also Tenn. Code Ann. § 40-35-103(5) (defendant's potential for rehabilitation is a proper sentencing consideration). This factor overcomes the presumption that the defendant is a favorable candidate for alternative sentencing. As such, he was properly ordered to serve his sentences in the custody of the Department of Correction.

In summary, we arrive at the same sentencing result at the trial court, albeit for different reasons.

III

---

however, the victim impact statement is not essential to our determination. The considerations recited in the main text of the opinion justify maximum sentences to be served in the Department of Correction. Thus, any additional potentially enhancing information which may be contained in the victim impact statement would only further justify these sentences. On the other hand, if the victim impact statement contained information favorable to the defendant which might mitigate the length of his sentence or support an alternative sentence, the defendant bore the duty of seeing that it was included in the record and waived our consideration of it by failing to see that it was included therein. See Tenn. R. App. P. 24(g); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993) (citations omitted).

[6]On our de novo review, we accord little countervailing weight to the defendant's subsequent admission of perjury. While this may have been a sincere admission of wrongdoing, it just as easily may have been a ploy by the defendant to try a different tactic to obtain more favorable sentencing after his original tactic of perjuring himself at trial did not work to his advantage.

Finally, we note from the technical record that the trial court entered all six judgments against the defendant on one judgment form. This is contrary to Rule 17 of the Supreme Court, which provides that a uniform judgment document "shall be prepared for each conviction; if there are multiple convictions in the same indictment, separate judgments should be filled out with appropriate notations stating whether the sentences will run consecutively or concurrently." Because the trial court's judgment does not comply with the rule, we remand the defendant's convictions of aggravated assault of Paul S. Green, Dedra Green and Shannon Ullery with instructions that the trial court amend its consolidated judgment document by generating one judgment document for each conviction. In addition, we caution the trial court to comply with Rule 17 with respect to any convictions that may result from the three convictions we have vacated and remanded for further proceedings.

In sum, the defendant's convictions of aggravated assault of Paul S. Green, Dedra Green and Shannon Ullery and the sentences imposed by the trial court are affirmed and remanded with instructions. The convictions of aggravated assault of Sarah Green, Kirstie Green and Paul Green are vacated and remanded for a new trial consistent with this opinion.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

14

_____
JOSEPH M. TIPTON, JUDGE