STATE of Tennessee, Appellee,

v.

Isaac Houston BROOKS, III, Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

Aug. 23, 1995.

Jan Rochester, Joe Patterson, Assistant Public Defenders, Jackson (at Trial), Thomas T. Woodall, Dickson, and George Morton Googe, District Public Defender, Jackson (on Appeal), for Appellant.

Charles W. Burson, Attorney General of Tennessee, and Jennifer L. Smith, Assistant Attorney General of Tennessee, Nashville,

Jerry G. Woodall, District Attorney General, and Donald Allen, Assistant District Attorney General, Jackson, for Appellee.

## OPINION

TIPTON, Judge.

The defendant, Isaac Houston Brooks, III, was convicted by a jury in the Madison County Circuit Court of various offenses arising from his taking of a pickup truck and his pursuit by the police. The offenses and his sentences are as follows:

| Offense | Sentence |
| --- | --- |
| 1. Theft of over $10,000 of property (Class C felony) | 7 years |
| 2. Aggravated assault (Class C felony) | 7 years |
| 3. Vandalism over $1,000 damage (Class D felony) | 4 years |
| 4. Vandalism over $1,000 damage (Class D felony) | 4 years |
| 5. Felony reckless endangerment (Class E felony) | 3 years |
| 6. Driving under the influence (Class A misdemeanor) | 11 mo., 29 days |
| 7. Vandalism under $500 damage (Class A misdemeanor) | 11 mo., 29 days |
| 8. Vandalism under $500 damage (Class A misdemeanor) | 11 mo., 29 days |
| 9. Vandalism under $500 damage (Class A misdemeanor) | 11 mo., 29 days |
| 10. Criminal impersonation (Class B misdemeanor) | 6 months |
| 11. Disobeying traffic signal (Class C misdemeanor) | 30 days |

The felony sentences were based upon the defendant being found to be a Range II multiple offender. The trial court ordered that all sentences were to be served concurrently except for the theft sentence, making an effective sentence of fourteen years in the custody of the Department of Correction. The defendant was also assessed fines totalling $17,075.

The defendant appeals as of right and contends the following:

(1) The evidence was insufficient to convict him of five offenses of vandalism, particularly as to the amount of damage needed to sustain felony convictions and as to the necessary mental state.

(2) The evidence was insufficient to convict him of criminal impersonation.

(3) The evidence was insufficient to convict him of theft of the truck as opposed to joy riding.

(4) A police officer's opinion of the amount of damage to the officer's patrol car should have been excluded from the evidence.

(5) The defendant should have been allowed to admit his out-of-court statement to an investigator into evidence.

(6) His convictions for aggravated assault and felony reckless endangerment constitute plain error by violating his right against double jeopardy.

(7) He should have been sentenced as a Range I offender and should have received concurrent sentences.

We reverse the theft conviction for plain error in the failure to instruct the jury on the offense of joyriding. The remaining convictions are upheld, but the sentences on the felonies are vacated because of the defendant's improper designation as a Range II multiple offender. The case is remanded for

a new trial on the theft charge and resentencing on the remaining felonies.

On the evening of July 30, 1992, Shirley Severe arrived home from a babysitting job at approximately 10:00 p.m. Shortly thereafter, the defendant, a friend of Ms. Severe's boyfriend's uncle, stopped by and asked if he could ride with her and her brother-in-law to pick up her truck at her boyfriend's place of work. Ms. Severe and the defendant picked up the truck, a 1990 maroon Nissan pickup, at approximately 12:15 a.m., and the defendant asked if he could ride with Ms. Severe to a local nightclub known as The Harbor. The two stopped by the defendant's home so that he could change his shirt and arrived at the club at approximately 12:50 a.m.

As Ms. Severe started to park, the defendant asked her if she was going to pay for his admission into the club. She declined and told the defendant that she was going in to tell a friend that she was not going to stay and that she would be right back. The defendant asked her to leave the keys so that he could listen to the radio. Warning the defendant not to drive her truck, Ms. Severe left the keys and her purse in the vehicle.

After being inside only a few moments, Ms. Severe returned to find her truck gone. According to Ms. Severe, she walked up the street and happened to find an off-duty policeman. She immediately advised him that "this guy" had stolen her truck and that she was going to his house to see if he had taken it home. The officer offered her a ride, and the two of them went to the defendant's home only to find that he was not there. Ms. Severe then returned to the club and told an employee to get an officer who had gone inside. She reported the stolen vehicle to the officer and gave him a description of the truck.

Officer Johnson, who took the report, immediately put out a radio notice for the vehicle. Officer Jeff Whitworth, another officer with the Jackson Police Department, was headed northbound on the bypass when he heard the radio communication, and he spotted the reported vehicle heading southbound.

He got behind the truck and ran a check on the license plate number. After verifying ownership, he got closer to the vehicle and observed that it slowed down. Noting that two males were in the truck, he radioed for a backup. He waited to activate his siren and lights until he saw Officer Rodney Ezelle and when Officer Ezelle pulled in behind Officer Whitworth, the pursuit began.

Officer Whitworth testified that the truck immediately accelerated, reaching speeds of up to one hundred miles per hour. According to the officer, the truck often crossed the dividing line, proceeding north in the southbound lane. At an intersection it passed through a traffic light that was red. The defendant then drove to the outskirts of town.

Meanwhile, other officers joined in pursuit. Officers Jeff Austin and Rex Curry fell in behind Officer Ezelle. Both officers corroborated Officer Whitworth's version of the incident, testifying that the defendant's vehicle swerved from lane to lane and ran through a red light.

The defendant turned the truck into a dead-end road at which time it struck a highway sign that landed in the back window of Officer Whitworth's patrol car. The defendant then spun the truck around in the yard of a house, returned to the roadway, and struck Officer Austin's vehicle, which was parked in the middle of the road. The defendant accelerated again and fishtailed. Officer Ezelle stopped his patrol car further down the road and stood outside the vehicle. According to the officers, the defendant headed toward Officer Ezelle, and the officer ran into a cotton field. Officer Ezelle testified that the vehicle appeared to be coming directly toward him, so he drew his weapon. The defendant then veered toward the left and struck Officer Ezelle's patrol car. It continued into two other yards, striking the porch of a house and bouncing off. The defendant attempted to return to the road but was stopped by a hedgerow ditch.

After the truck came to a stop, the defendant and his passenger were arrested and

taken to the police station. The defendant stated that his name was Derrick Brooks, and he was given a breathalyzer test. Results of the test indicated that the defendant registered a .20 percent blood alcohol level.

## I

### Sufficiency of Evidence

 The defendant contends that the evidence was insufficient to convict him of the offenses of vandalism, criminal impersonation and theft. Initially, we note that our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn.1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

### (A)

The defendant was convicted of five counts of vandalism, relative to damage to Ms. Severe's truck, three police cars owned by the Jackson Police Department, and three separate properties on Darnell Road. Regarding the vandalism counts that involved damage in amounts exceeding one thousand dollars, the defendant contends that the proof is inadequate to show that value of the damage exceeded this amount. We disagree.

The offense of vandalism is defined in T.C.A. § 39–14–408 as follows:

(a) Any person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that he does not have the owner's effective consent is guilty of an offense under this section.

(b) For purposes of this section:

(1) "Damage" includes, but is not limited to:

(A) Destroying, polluting or contaminating property; or

(B) Tampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person; and

. . . .

(c) Acts of vandalism are to be valued according to the provisions of § 39–11–106(35) and punished as theft under § 39–14–105.

Value is defined in T.C.A. § 39–11–106(35(A)(i)) as "[t]he fair market value of the property and services at the time and place of the offense."

 Ms. Severe testified that on the night the truck was taken, it was valued at over ten thousand dollars. She stated that after the incident, she had paid over three hundred dollars just to get the vehicle in driveable condition. When questioned as to the value of the truck when it was returned to her, she stated, "I don't know. Maybe four to $5000. I don't know."

 The defendant was also convicted of vandalism exceeding one thousand dollars of three police patrol units belonging to the Jackson Police Department. Though he did not testify as to the exact value of the damage done to his unit, Officer Whitworth related at trial that the back windshield of his patrol car had been shattered by a sign the defendant had hit. A photograph of the shattered window was admitted into evidence. Officer Ezelle testified that although the damage to his patrol car had been minimal, the vehicle driven by the defendant had hit his right front bumper. Officer Austin testified that the defendant's vehicle had hit his patrol car in the center part of the vehicle and had folded the hood and buckled the

front part of the car. He estimated that the value of the damages would exceed one thousand dollars, and photographs of the damaged vehicle were admitted into evidence.

After viewing the photographs and hearing the testimony, the jury accredited the state's witnesses on the issue of value. We conclude that sufficient evidence of the value of the damage to Ms. Severe's vehicle and the three police vehicles was presented to allow the jury to convict the defendant of two counts of vandalism of property with damage exceeding one thousand dollars.

As to the above and all other counts of vandalism, the defendant contends that the proof was insufficient to sustain a finding that the defendant "knowingly" caused damage to the property of another pursuant to the vandalism statute. Essentially, the defendant asserts that his intoxicated condition negated the mental state necessary to convict him of the offense. Again, we disagree.

■ The law recognizes that a person may be so intoxicated that he or she is prevented from forming the requisite, culpable mental state needed for a given offense. *See* T.C.A. § 39-11-503(a), Sentencing Commission Comments. In this respect, a person's voluntary intoxication could be to such an extent that the person would be prevented from knowingly causing damage. However, whether the defendant was too intoxicated to form the requisite mental state was for the jury to determine. *See State v. Bell,* 690 S.W.2d 879, 882 (Tenn.Crim.App.1985).

The proof showed that although the defendant registered a .20 percent blood alcohol level on the intoximeter test administered shortly after he was arrested, witnesses observing him testified that he did not appear to be drunk. Ms. Severe testified that although the defendant had been drinking, he was not drunk. Officer Curry testified that when he questioned the defendant while booking him at the police station, the defendant did not appear to have difficulty answering questions and there was nothing about his condition that indicated he was

intoxicated. Thus, there was evidence from which the jury could have found beyond a reasonable doubt that the defendant possessed the requisite mental capacity to be guilty of vandalism.

### (B)

■ The defendant next claims that the evidence is insufficient to support his conviction for criminal impersonation. He contends that there was no proof in the record as to why he would have intended to defraud the officers when he told them his name was "Derrick Brooks" when he was arrested.

Pursuant to T.C.A. § 39-16-301, a person commits the offense of criminal impersonation if he assumes a false identity "with intent to injure or defraud another person." In this case, the defendant presented himself as Derrick Brooks when he was arrested by Officer Curry. The name of Derrick Brooks also appeared on the intoximeter printout tape that was admitted into evidence at trial because the defendant was booked and processed under this name.

■ To establish the offense of criminal impersonation, the state is not required to show proof of why the defendant sought to defraud the Jackson Police Department, only that he intended to misrepresent his true identity. The jury had ample evidence to conclude that the defendant acted with intent to defraud. This issue is without merit.

### (C)

The defendant contends that there was insufficient evidence of him having the intent to deprive the victim of her truck, a necessary element of the offense of theft. He argues that, instead, the evidence only supports a conviction for joyriding. In response, the state contends that the offense of theft does not require that the offender have the intent to deprive the owner *permanently,* only the intent to deprive in terms of simply confiscating or taking away the owner's property. The state's position is based upon a legal dictionary definition of "deprivation"

from which it concludes that by the victim telling the defendant not to drive the truck, his then taking the truck had to be with the intent to deprive the victim of her truck.

■ Our consideration of this issue leads us to conclude that plain error exists relative to the trial court's failure to instruct the jury about the offense of joyriding as a lesser included offense to theft. The record reflects that the trial court considered instructing the jury about joyriding, but rejected such an instruction because of an apparent misunderstanding of the elements of theft and joyriding relative to the defendant's culpable intent. In a similar vein, the state's closing argument to the jury about what conduct by the defendant constituted the offense of theft increased the risk of an unreliable verdict caused by the failure to instruct about joyriding and to explain the meaning of the intent to deprive.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39–14–103. Pursuant to T.C.A. § 39–14–106, the offense of joyriding occurs if a person "takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." Under these statutes, the sole difference between theft of a vehicle and joyriding would be the offender's intent.

Pursuant to T.C.A. § 40–18–110(a), a trial court is required "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." In *Spencer v. State*, 501 S.W.2d 799, 800 (Tenn.1973), our supreme court held that when the facts fairly raise the issue relative to the defendant's intent in taking a vehicle, it is incumbent upon the trial court to instruct the jury as to the lesser included offense of joyriding. We believe the same remains true under the present offense of theft relative to the intent in obtaining or exercising control over a vehi-

cle. Thus, the meaning of "intent to deprive" is central to the difference between theft of a vehicle and joyriding and the state's suggested definition in this case ignores the existing statutory definition. The following definition of "deprive" is provided in T.C.A. § 39–11–106(a)(8):

(A) Withhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner;

(B) Withhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation; or

(C) Dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely. . . .

This statutory definition was not provided by the trial court to the jury.

In the present case, to the extent the indictment alleged the defendant's theft of the victim's truck, joyriding would be a lesser included offense as charged. *See Howard v. State*, 578 S.W.2d 83, 85 (Tenn.1979). In *Strader v. State*, 210 Tenn. 669, 362 S.W.2d 224, 228–29 (1962), our supreme court explained how a trial court should determine the need for a lesser included offense instruction.

Thus, the command of this statute is without qualification or exception. It includes all cases of felonies with lesser included offenses, and requires the judge to charge the jury as to all the law of each of such offenses in all such cases. But we have held that such charge need not be given where there is *"no evidence"* of such offense, and the charge would be a mere abstraction "upon hypothetical questions not suggested by proof."

But where the evidence, upon any view the jury may take of it, permits an inference of guilt as to such lesser included offenses, it is the mandatory duty of the Trial Judge to charge all the law as to each of such offenses, and a failure to do so requires a reversal and a new trial.

(Citations omitted). In effect, the trial court must consider the evidence in the light most favorable to the existence of the lesser included offense and if the evidence so considered permits an inference of guilt of a lesser offense, the trial court must give instructions as to that lesser offense. Otherwise, the trial court's consideration of the evidence runs the risk of invading the province of the jury relative to witness credibility, the weight and sufficiency of the evidence, and the degree of the offense, if any, to be sustained.

In this case, the facts that the defendant knew the victim, that the victim left the defendant in the truck with the keys and that the defendant was seen with the truck within a relatively short period of time after it was missing could easily lend themselves to a conclusion that the defendant took and used the truck without intending to deprive the owner as contemplated to be necessary for theft under the legislative definition of "deprive." Obviously, the defendant's taking of the truck, using it for a period of time, and evading the police in the truck, including wrecking it into police cars, could, in sum, support a guilty verdict for theft, but the defendant was entitled to have the jury consider the matter upon full instructions relative to both theft and joyriding. Thus, it was fundamental error not to instruct the jury relative to the elements of both theft and joyriding.

## II

### Expert Testimony

The defendant next contends that the trial court erred in permitting Officer Austin to testify as to the amount of damage that was done to his patrol car. He argues that the officer was neither an expert nor the owner of the vehicle and should, therefore, not have been allowed to testify as to the value of the damage to the patrol car.

■ The state attempted to elicit testimony from Officer Austin concerning the amount of damage done to his patrol car. The defense objected on the ground that he was not the owner of the vehicle nor was he an expert. The state was then allowed to question the officer concerning his experience and training in estimating damage to vehicles. Officer Austin testified that he had worked more than one hundred accidents in which vehicles were damaged and had been required to estimate whether the damage was under or over four hundred dollars in each of the accidents. He testified that through his experience he had been able to determine by estimation the amount of damage caused to a particular vehicle.

The defense again objected to the officer's testimony and was allowed to conduct *voir dire* of the witness. Though he admitted that he had never worked for an automobile dealership or as an insurance adjuster and that he had never attended "estimator school" or a General Motors training school, the officer was found to be qualified to state his opinions and conclusions as an expert by the trial court. The court, however, cautioned the jury that in weighing the testimony relative to the estimate of damages, it should consider the officer's limited experience and qualifications. Officer Austin then testified that his estimation of the amount of the damages to his patrol car would be over one thousand dollars.

The testimony of experts is governed by Tenn.R.Evid. 702 which states the following:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

The determination of the qualifications of an expert witness and the relevancy and competency of expert testimony are matters which are left to the sound discretion of the trial court. *State v. Scott,* 735 S.W.2d 825, 828 (Tenn.Crim.App.1987).

In the instant case, the state established that Officer Austin, as a police officer, had received training in estimating whether the

amount of damage to a vehicle exceeded four hundred dollars. In the seven years he had been a police officer, he had worked at least one hundred accident scenes where vehicles were damaged, and he had been required to estimate whether the damage had exceeded the four hundred dollar amount. In many of the accidents, he had found out later what the value of the actual damage had been. We conclude that the trial court did not abuse its discretion in permitting Officer Austin to testify that damage to his patrol car exceeded one thousand dollars.

## III

### Exclusion of Defendant's Statement

The defendant argues that the trial court erred in sustaining the state's objection to defense counsel's cross-examination of Investigator Paul White concerning the statement made by the defendant to Investigator White. The defendant contends that the statement is a continuation of the incriminating statement made to the investigator concerning the defendant's true identity in relation to the criminal impersonation charge and the defense should have been allowed to inquire as to the remainder of the defendant's statement.

At trial, the state examined Investigator White concerning the name the defendant gave him before being questioned. Investigator White testified that when he came to work on the day of the defendant's arrest, he asked the officers in booking to bring Isaac Brooks to his office. He testified that when the defendant was brought in, he asked him if his name was Isaac Brooks and the defendant had admitted that it was, in contradiction to what he had told other officers earlier.

On cross-examination, the defense presented an Advice of Rights form and asked Investigator White if he had advised the defendant of his rights. The state then objected to the defense's cross-examination concerning the defendant's statement in that it would be self-serving hearsay and therefore inad-

missible. The trial court allowed questioning concerning the advisement of the defendant's rights but would not allow the defense to question Investigator White concerning the defendant's statement. The officer stated that he advised the defendant of his rights and apprised him of the crimes of which he was charged. He also testified that the defendant gave a statement, but the defense was not allowed to question him concerning the substance of the statement. The written statement was made an exhibit for identification by the trial court.

The appellant seems to be making an argument analogous to Tenn.R.Evid. 106, often referred to as the "rule of completeness," which requires that when part of a writing or recorded statement is introduced by a party, the opposing party may at that time require the introduction of any other part of the writing or recording when fairness so requires. The defendant cites this court's opinions in *State v. Robinson*, 622 S.W.2d 62, 71 (Tenn.Crim.App.1980), *app. dismissed and cert. denied*, 454 U.S. 1096, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981) and *State v. Caldwell*, 696 S.W.2d 541, 542 (Tenn.Crim.App. 1985), for the proposition that a defendant is entitled to admission of the entire contents of a statement he gave police except for such portion as might not be relevant.

In this case, Investigator White's testimony was elicited for the sole purpose of showing the contradiction in the name the defendant gave officers earlier in the day. No testimony concerning the defendant's statement was elicited. Contrary to the defendant's position, his statement was not a continuation of any confession made to Investigator White. The defendant was merely identifying himself.

Moreover, although Tenn.R.Evid. 803(1.2)(A) provides for the admission of a statement offered against a party that is the party's own statement, the defendant's self-serving statements were not admissible by him. *Moon v. State*, 146 Tenn. 319, 242 S.W. 39, 54 (1922). In *Hall v. State*, 552 S.W.2d 417, 418 (Tenn.Crim.App.1977), this court

quoted as follows from *Wharton's Criminal Evidence*, 13th Edition, § 303, as to the reason for this rule:

A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence.

This issue is without merit.

## IV

## Double Jeopardy

The defendant next contends that his convictions for the offenses of aggravated assault and reckless endangerment violate his right against double jeopardy as guaranteed by both the state and federal constitutions. He concedes that this issue was not raised in his motion for new trial, but submits that the double jeopardy violation is plain error and should therefore be considered by this court on appeal.

■ Failure to include an issue in a defendant's motion for a new trial ordinarily bars appellate review of the issue because it is treated as waived. *See* T.R.A.P. 3(e). However, when a procedural default such as this constitutes waiver, it remains within the appellate court's discretion to notice and remedy plain error in the record. *See* Tenn. R.Crim.P. 52(b). A plain error is one that is obvious or clearly shown in the record and affects a substantial right of a party so as to warrant our consideration of whether action should be taken to do substantial justice. *See State v. Adkisson,* 899 S.W.2d 626, 636–42 (Tenn.Crim.App.1994).

■ The Double Jeopardy Clause of the federal and state constitutions protects (1) against a second prosecution for the same offense after acquittal, conviction or other trial resolution not caused by manifest necessity and (2) against multiple punishments for the same offense. *See North Carolina v.*

*Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *United States v. Johnson,* 584 F.2d 148, 153 (6th Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979). It simply states that no person shall twice be put in jeopardy of life or limb for the same offense. U.S. Const. amend. 5; Tenn. Const. art. I, § 10.

■ When the issue relates to the imposition of multiple punishments, the analysis focuses upon determining whether or not the legislature intended that multiple punishments could be imposed for the same conduct. *See, e.g., Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981). In conducting this analysis, the United States Supreme Court adopted a rule of statutory construction to assist in determining whether two offenses or only one was intended by the legislature. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court stated, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. This test was essentially adopted by our supreme court in the case of *State v. Black,* 524 S.W.2d 913, 919 (Tenn. 1975), where it stated that "each case requires close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances."

■ At the time of the events in this case, T.C.A. § 39–13–102(a), provided that an aggravated assault is committed by a person who:

(1) Commits an assault as defined in § 39–13–101, and

(A) Causes serious bodily injury to another; or

(B) Uses or displays a deadly weapon; or

(2) Being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault described in subsection (a); or

(3) After having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

Pursuant to T.C.A. § 39–13–101(a) an assault occurs when a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another," "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury," or "[i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." The offense of reckless endangerment occurs when a person "recklessly engage[s] in conduct which places or may place another person in imminent danger of death or serious bodily injury," and is a Class E felony if the reckless endangerment is committed with a deadly weapon. T.C.A. § 39–13–103.

Aggravated assault may be proven showing that a parent or custodian has failed to protect a child from an aggravated assault. Unquestionably, reckless endangerment is not necessarily proven by this conduct. Aggravated assault may also be proven by showing that a person, while being restrained under court order, attempts to cause or causes bodily injury or commits or attempts to commit an assault against the person protected by said order. This provision does not require serious bodily injury as does the reckless endangerment statute. Conversely, an aggravated assault was not necessarily

proven by proving the elements of reckless endangerment. Thus, under the *Blockburger* test, reckless endangerment is not the same offense as aggravated assault. Plain error does not exist.

## V

### Sentencing

▉ The defendant contends that the trial court erred by sentencing him as a Range II multiple offender and in ordering that the theft sentence be served consecutively to the remaining sentences. The state concedes that the defendant should only have been sentenced as a Range I standard offender pursuant to T.C.A. § 40–35–105 because at the time of the commission of the offenses in this case, he had only one previous felony conviction.[1] We agree and conclude that the case should be remanded for the purpose of resentencing the defendant as a Range I offender.

As to consecutive sentencing, the defendant complains that the trial court never found by a preponderance of the evidence that any factor existed that could justify consecutive sentencing. *See* T.C.A. § 40–35–115(b). In response, the state contends that in *State v. Taylor,* 739 S.W.2d 227, 228 (Tenn.1987), our supreme court held that the trial court is not required to make express reference to the consecutive sentence criteria. Also, it asserts that in any event, the record fully justifies consecutive sentences relative to the defendant being an offender with an extensive record of criminal activity, who is dangerous, and who is being sentenced for offenses committed while he was on probation. *See* T.C.A. § 40–35–115(b)(2), (4) and (6).

▉ We note that the record reflects that the only statement the trial court made in explanation of ordering the theft sentence to be served consecutively is the following:

> I might say that what I have done here is to separate on a consecutive basis the

---

1. To qualify as a Range II multiple offender a defendant must have "a minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes." T.C.A. § 40–35–106(a)(1).

theft at one end of it with the other end that involves the endangerment to the police officers. Basically, that's it. The theft on one end, and in between all of these other things, I am letting them run concurrent.

We view this statement to be inadequate to meet the trial court's obligation to render appropriate findings of fact upon the record for sentencing purposes. Contrary to the state's contention, *Taylor* in no way holds that the trial court is not required to make express reference to the consecutive sentencing criteria found by it to exist. On the other hand, the record before us provides adequate justification for a consecutive sentence for the theft based upon the defendant committing the present offenses while on probation and his conduct and history justifying a conclusion that he is a dangerous offender.

In this respect, our remanding the theft charge for a new trial while remanding the other felony cases for resentencing will not unfairly result in the defendant serving un-warranted consecutive sentences if he is convicted at retrial.

### Conclusion

In consideration of the foregoing and the record as a whole, we reverse the trial court's judgment of conviction for the offense of theft and remand the case for a new trial on that charge. We affirm the remainder of the defendant's convictions but vacate all of the defendant's felony sentences and remand the case for resentencing in conformity with this opinion.

JONES and PEAY, JJ., concur.