**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**JULY 1998 SESSION**

**FILED**

**August 26, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **NO. 02C01-9710-CC-00413** |
| Appellee, | ) | |
| | ) | **FAYETTE COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JON KERRY BLACKWOOD,** |
| **MACARTHUR MONIE,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Second Degree Murder) |

**FOR THE APPELLANT:**

**GARY F. ANTRICAN**
District Public Defender

**SHANA C. McCOY-JOHNSON**
Asst. District Public Defender
118 E. Market
P.O. Box 700
Somerville, TN 38068-0700

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**GEORGIA BLYTHE FELNER**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**ELIZABETH T. RICE**
District Attorney General
302 Market Street
Somerville, TN 38068

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

The defendant, Macarthur Monie, appeals his conviction by a Fayette County jury of second degree murder. The defendant was sentenced as a violent offender to twenty-three (23) years. On appeal, the defendant contends the evidence presented at trial was insufficient to support a verdict of guilty for second degree murder. Specifically, the defendant contends that as he had a blood-alcohol content of 0.33% shortly after his arrest, he was unable to form the requisite intent for a "knowing" killing. The defendant also contends the trial court's sentence is excessive. The judgment of the trial court is AFFIRMED.

## FACTS

The defendant and his three (3) brothers resided together in a house in Fayette County, Tennessee. The victim, Raymond Rivers, was a cousin of the brothers and visited the defendant at the house almost daily. The defendant's brother Andrew testified that on January 26, 1997, the victim arrived at their residence and left with the defendant. Since he had worked the previous evening, Andrew then went to sleep. Andrew testified that he was awakened at approximately 1:15 p.m. by the victim shouting the defendant had a gun. The victim repeated the statement several times. Andrew Monie then heard a gun fire. Andrew went into the living room and discovered the victim lying on the floor bleeding profusely from a shotgun wound to the face and neck. When Andrew asked the defendant why he shot the victim, the defendant replied that the victim had "pulled a knife" on him. Andrew Monie then phoned 9-1-1.

The defendant's brother, Wade Monie, testified that his shotgun was used to kill the victim. He testified that he kept the shotgun in a case under his bed, unloaded. Thus, the defendant retrieved the shotgun from under his brother's bed, uncased it, loaded it, returned to the living room, and killed the victim.

2

Police arrived at the scene and arrested the defendant. A shotgun that smelled of freshly-fired gun powder was discovered in Wade Monie's bedroom, lying on top of his bed. The victim was lying on the living room floor with a screw driver by his hand.

The defendant was intoxicated at the time of his arrest. He was taken to the hospital where a blood sample was taken to determine the alcohol content of the defendant's blood. The test revealed an alcohol level of 0.33%. The next morning, approximately eighteen (18) hours after the defendant was arrested, the defendant gave a statement to the police. The defendant stated that he and the victim argued about a debt the victim owed him. The defendant stated that the victim had a can of what the defendant believed to be "Mace," and that the victim threatened to spray him with it. The defendant also alleged the victim threatened to cut him. A search of the house by the police did not reveal a can of "Mace" or a knife. A screw driver was found by the victim's hand. One of the defendant's brothers testified that the victim regularly used a screw driver to open the victim's door as the "lock was messed up."

The defense offered no proof at trial. The jury was charged as to second degree murder and voluntary manslaughter. The defendant was convicted of second degree murder.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence presented at trial is insufficient to support a verdict of guilty for second degree murder. He contends the evidence only supports voluntary manslaughter. The defendant's argument is that his extreme intoxication at the time of the offense, as supported by the blood alcohol test, prevented him from being able to "knowingly" kill the victim.

3

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996); State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984).

The defendant was convicted of the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "Knowing" is defined by statute as:

> 'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-106(a)(20).

The defendant argues that his voluntary intoxication prevented him from "knowingly" killing the victim. Although voluntary intoxication is not itself a defense to second degree murder, it is relevant to negate a culpable mental state. Tenn. Code Ann. § 39-11-503(a). In this case the trial court properly charged the jury as to the relevance of voluntary intoxication. Whether a defendant is too intoxicated to form the requisite mental state is a question for the jury. State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995). The jury obviously concluded that the defendant was not so intoxicated as to be unable to form the required mental state of "knowing." The actions of the defendant in securing the shotgun from under the bed, removing it from its case, loading it, returning to the living room and shooting the victim at close range

4

justify the jury's finding.

This issue is without merit.

## SENTENCING

The defendant contends the trial court imposed an excessive sentence by erroneously failing to give weight to two (2) mitigating factors. The defendant does not contest the trial court's finding of the applicability of two (2) enhancement factors, to wit: the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range,[1] and the defendant employed a firearm during the commission of the offense. Tenn. Code Ann. § 40-35-114(1), (9).

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

For a Class A felony the presumptive sentence is the midpoint of the range if there are no enhancing or mitigating factors. Tenn. Code Ann. § 40-35-210(c). The range of punishment for the Class A felony of second degree murder is fifteen (15) to twenty-five (25) years. The midpoint sentence would be twenty (20) years; however, there are two (2) enhancement factors that are applicable.

---

[1] The defendant had prior convictions for grand larceny and petit larceny.

5

The defendant contends the trial court erred by rejecting the mitigating factors of voluntary intoxication and prior mental illness. Voluntary intoxication is specifically excluded from consideration as a mitigating factor. Tenn. Code Ann. § 40-35-113(8). Mental illness can be a mitigating factor under Tenn. Code Ann. § 40-35-113(8); however, there is no evidence that the defendant was suffering from any mental disease or defect at the time of the killing. The trial court properly disregarded these mitigating factors, and we decline to disturb the sentence it imposed.

The judgment of the trial court is AFFIRMED.


_____
**JOE G. RILEY, JUDGE**


**CONCUR:**



_____
**CURWOOD WITT, JUDGE**



_____
**ROBERT W. WEDEMEYER,**
**SPECIAL JUDGE**