IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 18, 2001

## STATE OF TENNESSEE v. MARVIN D. BROWN, a/k/a MELVIN TAYLOR

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2715     Steve Dozier, Judge**

**No. M2000-00388-CCA-R3-CD - Filed April 16, 2001**

The defendant, Marvin D. Brown, a/k/a/ Melvin Leroy Taylor, was convicted by a jury in the Davidson County Criminal Court of theft of property, a Class D felony. The trial court sentenced Defendant as a career offender to twelve years and ordered that it be served consecutive to a previously imposed sentence, for which parole had been revoked. In this appeal, Defendant contends that the evidence was insufficient to convict him for theft but, rather, the proof supported a conviction of joyriding, a Class A misdemeanor. Based upon applicable law and a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Marvin D. Brown.

Paul G. Summers, Attorney General and Reporter; Russell S. Baldwin, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Erik Herbert, Assistant District Attorney General; and Jason Lawless, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Background

At trial, the State's proof consisted of testimony from the owner of the van, the arresting police officer, and the two employees present when the van was taken. Defendant offered no proof.

On August 10, 1998, at approximately 1:00 p.m., Minnie Montgomery was working at her job driving a van which delivered clothing to various stores owned by Nicholson Cleaners of

Nashville. As she unloaded a delivery at the Elliston Place store, a man approached her and offered to help. She rejected his offer and continued to unload clothes until a co-worker, Michele Herman, asked her why the van was moving. She looked up to discover the van heading toward the parking lot exit. Montgomery instructed Herman to call the police and proceeded to chase after the van on foot. As she ran down the street, she was able to observe the driver. It was the same man who had offered to assist her earlier and later identified as Defendant. The man did not stop, and Montgomery watched as the van disappeared into traffic.

Shortly thereafter, a police officer arrived at the Elliston Place store. He took a description of the van and driver, then broadcast a police report containing the description to the other police officers in the vicinity. As a result, Michael Moss with the Metropolitan Police Department received the report while on patrol. The stolen van was described as having "Nicholson Cleaners" in broad letters on the side and was last seen driving northbound on Twenty-fifth Avenue. Moss immediately headed for an alley "notorious for [having] stolen vehicles dropped in it." Moss' intuition paid off. The van was found parked in the alley and backed up against a building–the suspect was still in the driver's seat. When he noticed Moss, he tried to flee through the side loading door but his escape was obstructed by a rather large pit bulldog on one side and the building on the other. Defendant was apprehended shortly thereafter, with the keys to the van still in his hand.

Fifteen minutes after the van's disappearance, Montgomery received a phone call informing her that the police had located the van three blocks away and had apprehended the suspect. Defendant was handcuffed and standing by the side of the police car when she arrived. After Montgomery identified Defendant as the person who took the vehicle, he was arrested.

Dewayne Seay testified at trial that he was the owner of Nicholson's Cleaners and confirmed that on August 10, 1998, he received a phone call that someone had stolen the "Nicholson van." Seay testified that the approximate value of the van was two thousand dollars and, according to his calculations, the van also contained approximately one hundred cleaning orders of clothing on the day that it was taken. Since each order averages three to four pieces of apparel, the van contained three to four hundred articles of clothing. An inventory revealed that nothing was missing when the van was recovered.

**Analysis**

Defendant contends that the evidence is insufficient to support a conviction for theft. Specifically, Defendant argues that the State failed to prove an essential element of the offense of theft, i.e., that he intended to "deprive" the owner of the property as defined in Tenn. Code Ann. § 39-11-106(a). Consequently, Defendant asserts that the proof adduced at trial was only sufficient to show that he committed the offense of joyriding, Tenn. Code Ann. § 39-14-106. We disagree.

When evidentiary sufficiency is questioned on appeal, we must determine "whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Tenn. R. App. P. 13(e);

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999). "On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." Hall, 8 S.W.3d at 599. Additionally, we recognize that a guilty verdict by a jury, approved by the trial court, 'accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Id. The defendant has the burden of demonstrating that the evidence is insufficient to support his or her conviction. Id. Questions concerning the credibility of witnesses, the weight and value of evidence, and factual issues raised by the evidence are resolved by the trier of fact. Id. This Court does not reweigh or reevaluate the evidence. Id.

Under Tennessee law, a person commits Class D felony theft when, "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent," and the value of the property "is one thousand dollars ($1,000) or more but less than ten thousand ($10,000)." Tenn. Code Ann. §§ 39-14-103, 105(3) (1997). In addition, "[d]eprive means to: [w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Id. § 39-11-106(a)(8)(A) (1997).

By contrast, joyriding occurs when a person "takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person *does not have the intent to deprive* the owner thereof." Tenn. Code Ann. § 39-14-106 (1997) (emphasis added). This Court has previously observed that "the sole difference between theft of a vehicle and joyriding [is] the offender's intent." State v. Brooks, 909 S.W.2d 854, 860 (Tenn. Crim. App. 1995). Unless the offender has "intent to deprive" as defined by statute, the offense is joyriding rather than theft. Id.

As noted above, to obtain a conviction for theft, the State must prove (1) that Defendant knowingly obtained or exercised control over property, (2) that Defendant did not have the owner's effective consent, and (3) that Defendant intended to deprive the owner of the property. See Tenn. Code Ann. § 39-14-103 (1991); State v. Amanns, 2 S.W.3d 241, 244 (Tenn. Crim. App. 1999). The sole dispute between the parties concerns the third element only, namely, whether Defendant had the requisite *intent to deprive* the owner of the van as defined by the statute. The intent must be to deprive the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner. Defendant asserts that possessing the vehicle for only twelve minutes was insufficient to constitute "permanent" deprivation to the owner and, further, that twelve minutes was not a sufficient period of time to be without one's property so that the value or enjoyment of the property would be "substantially" diminished. Defendant points to the fact that he did not attempt to sell the van or hold it for "ransom" as additional proof of his lack of intent to "deprive." The State responds that Defendant's intent to deprive was proven by the fact that he took the van to a "known dumping ground for stolen vehicles."

After examining the evidence in the light most favorable to the State, we conclude that the proof was sufficient for a rational jury to find beyond a reasonable doubt that when Defendant took the van, he possessed the requisite "intent to deprive" as defined in Tenn. Code Ann. § 39-11-106(a)(8)(A).  The van was parked in a known repository for stolen vehicles and Defendant leaped out of the vehicle with the keys in his hand.  These facts are evidence that Defendant had the intent to permanently withhold the property from the owner.  We are unpersuaded by Defendant's argument that failure to sell or ransom the van indicated the absence of intent.  Clearly, the jury could infer that he was captured too early in the criminal act to accomplish either of these deeds, thanks to the efficiency of the police department and Moss' detective work.  The short span of time between Defendant's commission of the offense and his capture fails to negate the State's proof concerning theft.  The State was required to prove beyond a reasonable doubt only that Defendant *intended* to deprive the owner of the vehicle, not that he was 100% successful in his endeavors.

It is well-established "that a jury may infer a criminal defendant's intent from the surrounding facts and circumstances." State v. Roberts, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996).  In fact, in most cases the jury must infer the defendant's intent from circumstantial evidence. Id.  The jury has done so in this case.  We further observe that the jury was properly instructed on the lesser-included offense of joyriding, yet found Defendant guilty of theft.

A finding by the trial court that the crime was committed by defendant removes a presumption of innocence and replaces it with a presumption of guilt requiring that the accused have the burden in the appellate court of illustrating why the evidence is insufficient to support this finding. See State v. Bland, 958 S.W.2d 651, 659 (Tenn.1997).  Defendant has failed to meet this burden.  Consequently, he is not entitled to relief on this issue.

**Conclusion**

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE