IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 6, 2001

## STATE OF TENNESSEE v. CHRISTOPHER OSBORNE

**Direct Appeal from the Criminal Court for Williamson County**
**No. II-599-146     Timothy L. Easter, Judge**

---

### No. M2000-00802-CCA-R8-CD - Filed March 14, 2001

---

A Williamson County jury convicted the defendant of attempted first degree murder and felony reckless endangerment. The trial court sentenced him to concurrent sentences of twenty-four years and two years, respectively, as a Range I standard offender. In this appeal, the defendant alleges (1) the attempted first degree murder presentment was defective; (2) the proof was insufficient to sustain his attempted first degree murder conviction; (3) the trial judge erroneously failed to satisfy his "thirteenth juror" role; and (4) his sentence is excessive. Upon review of the record, we find no reversible error and affirm the judgments and sentences imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

John H. Henderson, District Public Defender; and Gene Honea, Assistant District Public Defender, Franklin, Tennessee, for the appellant, Christopher Osborne.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Lee E. Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted of attempted first degree murder and reckless endangerment with a deadly weapon and received an effective twenty-four-year sentence.[1] In this appeal, the defendant alleges (1) the attempted first degree murder presentment was defective; (2) the proof was insufficient to sustain his attempted first degree murder conviction; (3) the trial judge erroneously

---

[1] The defendant does not challenge his conviction for felony reckless endangerment.

failed to satisfy his "thirteenth juror" role; and (4) his sentence is excessive. Upon review of the record, we affirm the judgments and sentences imposed by the trial court.

## I. FACTS

On April 22, 1999, the defendant instructed Shannon Grissom to drive him to the residence of his estranged wife, Amy Osborne. This was actually the residence of Ms. Osborne's parents, but Ms. Osborne was residing there. At approximately 9:00 p.m., the defendant exited the vehicle with a shotgun, instructed Grissom to "go down the road," and then ran up the driveway. The defendant rang the doorbell numerous times in succession, and Fern Perry, Amy Osborne's mother, instructed Ms. Osborne to phone 911, which she did immediately. Mrs. Perry, Ms. Osborne, and Chase, the Osbornes' four-year-old son, proceeded to the utility room. The defendant broke the glass and inserted his arm attempting to open the deadbolt lock. Ms. Osborne struck the defendant's arm numerous times with a mop. The defendant then placed the barrel of a shotgun through the broken window, and Ms. Osborne "automatically" moved it upward and wrestled with the gun barrel. Mrs. Perry joined the struggle, and Ms. Osborne searched for her father's deer rifle. The Osbornes' son was approximately five feet directly behind Ms. Osborne and Mrs. Perry while they struggled with the gun. Perry heard police sirens during the struggle, and the defendant fled with the shotgun. The defendant never fired the shotgun. The defendant turned himself in to police the following day.

Ms. Osborne testified that at the time of the incident, she and the defendant were in the process of divorcing. Furthermore, she stated that the defendant referred to her as "his property" and stated to her numerous times that he would "kill[her] if [he] could get away with it." She stated that on April 22, 1999, the defendant passed her place of work approximately seven times, phoned her at work, and inquired if she was "seeing anyone." Later that evening at approximately 8:30 p.m., Ms. Osborne stated that she received a phone call from the defendant demanding the name and address of whomever she was dating. He then told Ms. Osborne that "he'd get her tomorrow," and that "he'd spend the rest of his life in the pen" before seeing her with someone else. Ms. Osborne stated that the defendant again phoned at approximately 8:45 p.m. and talked with Mrs. Perry. Ms. Osborne further testified that the defendant arrived at her residence with the shotgun shortly thereafter.

Shannon Grissom testified that on April 22nd, she met the defendant at approximately 11:30 a.m. She stated that the defendant's demeanor was calm and normal, and they subsequently went to Gina Burns' residence where the defendant used her phone. After she and the defendant left Burns' residence, the defendant instructed her to drive to Ms. Osborne's residence. Upon arrival, she stated the defendant exited the vehicle with a shotgun and instructed her to drive down the road. Furthermore, she stated that the defendant seemed angry but told her not to worry about it. On cross-examination, Grissom stated that the defendant took "crack" and "crank" during the day; he never said he intended to kill Ms. Osborne; and she was unsure if the gun was loaded. On redirect, Grissom admitted that she never mentioned the defendant's drug use to the police in her April 22nd

statement. Furthermore, she admitted that she and the defendant had become romantically involved since his arrest.

Officer Mike Jackson testified that when he arrived on the scene, he observed that there was damage to the residence's door and the door's glass panes. He stated that he stopped the defendant's vehicle, but Grissom was the only occupant. He further stated that the shotgun was never recovered.

Fern Perry testified that the defendant phoned her about 8:45 p.m. on April 22nd. She stated that the defendant first asked to speak with her husband, and she told him that he was not home. Perry further stated that the defendant inquired as to whom Ms. Osborne was dating, and he stated that he would spend the rest of his life in the penitentiary before he saw her and his son with someone else. The defendant arrived at the residence shortly thereafter. On cross-examination, Perry admitted that the defendant had time to fire the weapon, but believed he failed to do so because his son was nearby.

Jessie Osborne, the defendant's father, testified that he saw the defendant the day following the incident, and he persuaded the defendant to turn himself in to police. Jessie Osborne also stated that the defendant had a bad temper, was on drugs and alcohol, and was angry because he was unable to see his child. He opined that it would be out of character for the defendant to intend to kill someone.

The defendant testified that he did not go to the residence with the intention of killing anyone. He further explained that the gun was unloaded. The defendant admitted to threatening Amy Osborne and testified that he had ingested crank, crack, marijuana and alcohol on April 22nd. He stated that he was angry because he was not allowed to see his son at 5:30 p.m., as was scheduled.

On cross-examination, the defendant had no explanation for taking the gun from his vehicle to the residence. He stated that he "tossed" the gun in a wooded area approximately 300 yards from the residence, but conceded it was never recovered. He further testified that although he said that he would rather spend the rest of his life in prison than see someone else raise his child, he was not threatening to kill Ms. Osborne. He explained that by his statement, he meant that he wanted to be a part of his son's life. In reference to his drug use on April 22nd, the defendant testified that he ingested approximately $500 worth of crank, smoked approximately seven marijuana cigarettes, smoked crack, drank 1/5 liter of whiskey, and drank an undetermined amount of beer. However, he admitted that he knew he was going to Ms. Osborne's residence.

Regina Burns testified in rebuttal. She stated that the defendant and a female companion were at her residence after dusk on April 22nd. She admitted phoning Ms. Osborne's residence and requesting to speak with Ms. Osborne, at the defendant's request. She further testified that she did not smell alcohol on the defendant; he appeared able to drive; and he "looked the same as he always looked."

Based upon this evidence, the jury convicted the defendant of the attempted first degree murder of Ms. Osborne and reckless endangerment with a deadly weapon upon Mrs. Perry.

## I. PRESENTMENT

The defendant claims that the presentment failed to allege an overt act taken toward the commission of the crime. The presentment stated:

> The Grand Jurors for the State of Tennessee, duly elected, impaneled, sworn, and charged, to inquire for the body of the County of Williamson and State aforesaid, upon their oath aforesaid, present that Christopher Osborne, heretofore, to-wit, on the 22nd day of April, 1999, before the finding of this presentment, in said County and State, unlawfully, feloniously, intentionally and with premeditation did attempt to kill another, Amy Osborne, in violation of Tennessee Code Annotated, Section 39-13-202.

Our supreme court has recently addressed this issue in Wyatt v. State, 24 S.W.3d 319 (Tenn. 2000).[2] In Wyatt, the indictment alleged the defendant "did unlawfully, intentionally, deliberately and with premeditation attempt to kill Billie Carey in violation of Tenn. Code Ann. § 39-12-101 . . . ." Id. at 324. Wyatt's indictment, like the defendant's presentment, did not allege a specific overt act. Although in Wyatt our supreme court "encourage[d] the [s]tate to charge the crime of attempt in such a way that informs the defendant of the precise act or acts against which he is being called upon to defend," it held that the indictment was sufficient. Accordingly, the defendant's grand jury presentment is valid, and this issue is without merit.

## II. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence was insufficient to sustain his conviction for attempted first degree murder. We respectfully disagree.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a

---

[2]Within one week of the filing of his appellate brief and prior to the filing of the state's brief, defense counsel filed a letter with the clerk of this court acknowledging that the recent opinion of the Tennessee Supreme Court in Wyatt was contrary to his argument in his brief. We commend counsel, Gene Honea, for his strict adherence to the Code of Professional Responsibility. See Tenn. Sup. Ct. R. 8, DR 7-102(A)(2); –106(B)(1).

combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

The trier of fact, not his Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

## B. Analysis

The defendant contends that the state failed to sufficiently prove premeditation with regard to the defendant's charge of attempted first degree murder. In furtherance of his claim, the defendant states that the gun was never fired; the gun was unloaded; and his prior threats upon Ms. Osborne were made in the heat of passion.

The offense of attempt to commit first degree murder requires proof that the defendant unlawfully attempted to kill the victim, and that the attempt to kill was intentional and premeditated. Tenn. Code Ann. § 39-12-101(a); -202(a)(1); State v. Adams, 973 S.W.2d 224, 229 (Tenn. Crim. App.1997). The element of premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the offense. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995).

The facts clearly justify the jury's conclusion that the defendant acted with premeditation. The defendant threatened the victim on numerous occasions with the last threat occurring within thirty minutes of his attack, when the defendant stated "he'd spend the rest of his life in the pen" rather than see Ms. Osborne and his son with someone else. Upon arrival at the residence, the defendant removed the shotgun from his vehicle, ran approximately 100 yards to the residence's front door, attempted to gain entry to the residence, and thrust the gun's barrel inside the home after his attempts to enter were thwarted. Although the defendant did not fire his weapon, he did place it through the broken glass, and it came into contact with Ms. Osborne and Mrs. Perry. Furthermore, since the shotgun was never recovered, the jury was not required to conclude it was unloaded. Although the defendant may have ingested a large quantity of alcohol and illegal drugs on April 22nd, the record reflects that the defendant was at the home of Regina Burns at approximately 8:30

p.m. on April 22nd, and he appeared normal. Additionally, the defendant testified that after he heard police sirens, he fled the scene and discarded the weapon. It was within the jury's prerogative to reject the intoxication defense under these circumstances. *See* State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995).

We conclude that the evidence was sufficient to sustain the defendant's conviction for the attempted first degree murder of Amy Osborne. This issue is without merit.

## III. THIRTEENTH JUROR RESPONSIBILITY

The defendant alleges the trial judge erroneously failed to satisfy his "thirteenth juror" role and grant a new trial because the verdict was against the weight of the evidence. Again, we must disagree.

A trial judge has a mandatory duty to act as a thirteenth juror and grant a new trial following a verdict of guilty if the judge disagrees with the jury about the weight of the evidence. State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995); Tenn. R. Crim. P. 33(f). In the present case, the defendant makes no reference to the record suggesting that the trial judge disagreed with the jury concerning the weight of the evidence, nor have we found any such indication. We presume the trial judge fulfilled his thirteenth juror responsibility. Carter, 896 S.W.2d at 122. This issue is without merit.

## IV. SENTENCING

The defendant contends that his sentence is excessive. As a Range I standard offender, the defendant faced a range of punishment of fifteen to twenty-five years for the Class A felony of attempted first degree murder, and one to two years for the Class E felony of reckless endangerment with a deadly weapon. *See* Tenn. Code Ann. § 40-35-112(a)(1), (5). We find no reason to reduce the sentences.

### A. Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence

within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, the presumptive sentence for a Class A felony is the midpoint of the range. Tenn. Code Ann. § 40-35-210(c). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

## B. Analysis

The defendant concedes that the sentencing court properly applied enhancement factor (1) (previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range) based upon his three prior misdemeanor convictions. *See* Tenn. Code Ann. § 40-35-114(1). The defendant, however, disputes the sentencing court's application of enhancement factor (3) (more than one victim). *See* Tenn. Code Ann. § 40-35-114(3). Specifically, the defendant claims that the mere presence of the defendant's child near Ms. Osborne and Mrs. Perry did not make the child "a victim," as contemplated by Tenn. Code Ann. § 40-35-114(3).

Regardless of whether or not the trial court erred in applying enhancement factor (3), we conclude that the sentences were appropriate. We agree with the state and find that the trial court improperly rejected factor (10) (no hesitation about committing a crime when the risk to human life was high). Tenn. Code Ann. § 40-35-114(10). Risk to human life is an essential element of the crimes of attempted first degree murder and reckless endangerment and cannot be used to enhance sentencing when the person facing danger is the named victim. *See* Tenn. Code Ann. § 40-35-114; State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). However, this court has held that enhancement factor (10) may be applied where the defendant creates a high risk to the life of a person other than the named victim. State v. Bingham, 910 S.W.2d 448, 452-53 (Tenn. Crim. App. 1995).

The defendant placed the barrel of his shotgun through the broken window of the Perry residence. He, Mrs. Perry, and Ms. Osborne struggled with the weapon while his four-year-old son was located approximately five feet behind Mrs. Perry. We conclude that the child's close proximity to the defendant's attack with his shotgun created a high risk to the life of the child, who was not a named victim in the presentment. Accordingly, the trial court improperly rejected enhancement factor (10).

The pre-sentence report further shows that the defendant had two prior probation revocations. Thus, enhancement factor (8) (previous history of unwillingness to comply with the conditions of

a sentence involving release in the community) was applicable. *See* Tenn. Code Ann. § 40-35-114(8). Furthermore, the employment of a firearm is not an essential element of attempted first degree murder; thus, enhancement factor (9) (employment of a firearm, explosive device or other deadly weapon during the commission of the offense) was applicable to that offense. *See* Tenn. Code Ann. § 40-35-114(9); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994).

We conclude that even if the trial court erred by applying enhancement factor (3), the application of other enhancement factors and the proper rejection of mitigating factors justify the sentence of twenty-four years for attempted first degree murder and two years for reckless endangerment with a deadly weapon. The sentences are not excessive.

## CONCLUSION

Based upon the foregoing, we conclude (1) the defendant's attempted first degree murder presentment was proper; (2) the proof was sufficient to sustain the defendant's attempted first degree murder conviction; (3) the trial judge satisfied his "thirteenth juror" role; and (4) the defendant's sentences were proper. Thus, the judgments of the trial court are affirmed.

_____
JOE G. RILEY, JUDGE