IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2001

## STATE OF TENNESSEE v. JERET TYRONE PHILLIPS

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S41, 649 & S42, 117    Phyllis H. Miller, Judge**

---

**No. E2001-00987-CCA-R3-CD**
**February 22, 2002**

---

Defendant, Jeret Phillips, appeals from the order of the Sullivan County Criminal Court which revoked Defendant's probation and required him to serve his sentence in the Tennessee Department of Correction.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and ROBERT W. WEDEMEYER, JJ., joined.

Stephen M. Wallace, District Public Defender; and William A. Kennedy, Assistant Public Defender, Blountville, Tennessee, for the appellant, Jeret Tyrone Phillips.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On October 14, 1999, Defendant pled guilty to three counts of the sale of cocaine less than .5 grams, a Class C felony, and one count of the sale of cocaine over .5 grams, a Class B felony.  See Tenn. Code Ann. § 39-17-417 (1997).  The trial court imposed concurrent sentences of three years on each of the three counts of a Class C felony, and eight years on the fourth count, for an effective sentence of eight years.  Defendant was placed in the "boot camp" of the Department of Correction, and upon release on June 28, 2000, Defendant was placed on probation for the remaining term of the effective sentence.

As a condition of probation, Defendant signed a Certificate of Probation issued by the Tennessee Department of Correction.  On February 14, 2001, Defendant's probation officer filed an "emergency filing" of a probation violation warrant alleging that Defendant violated two rules of his Certificate of Probation.  The relevant portions of the certificate, which was entered into evidence without objection, are as follows:

Rule 2. I will obey the laws of the United States or any state in which I may be, as well as any municipal ordinances.

Rule 3. I will report all arrests, including traffic violations, immediately, regardless of the outcome, to my Probation/Parole Officer.

According to the warrant, Defendant was arrested for disorderly conduct and criminal impersonation on or about January 27, 2001, and assault and domestic violence, on or about February 14, 2001. Defendant was also charged with failure to immediately report his January arrest. Subsequently, on March 9, 2001, Defendant's supervising probation officer filed a violation report which alleged that Defendant also failed to report his arrest in February 2001.

The revocation hearing was held on April 9, 2001. Defendant did not testify. The State offered testimony from Ms. Pearl Luvene, Defendant's supervising probation officer. Ms. Luvene testified that she had supervised Defendant since his release from "boot camp," and that he never reported any new arrests. Ms. Luvene testified that on February 14, 2001, she received several calls from Mrs. Phillips, Defendant's wife, who insisted that Ms. Luvene file an "emergency" warrant revoking Defendant's probation. Ms. Luvene testified that she was unable to get to the courthouse, and Mr. Bob Henshaw filed the warrant on her behalf. She testified that the revocation was based on Defendant's new arrests and his failure to report these arrests. Ms. Luvene also testified that Defendant failed to perform the required community service work. Ms. Luvene further testified that Defendant failed to report in January, and that she has not had any further contact with Defendant.

Officer Steve Summey testified that on January 27, 2001, he and a fellow officer, Officer Hammonds were on patrol when they observed two men, including Defendant, standing on the property of the Robinson Funeral Home. The funeral home is located on Lincoln Street, in Kingsport, Tennessee. Officer Summey stated that a department memo instructed officers to "keep an extra patrol" on the funeral home because of the loitering and littering problems. The memo, which was entered into evidence without objection, was issued the day before the arrest. Officer Summey testified that when they ordered the men to leave, Defendant became "loud and disruptive," accused them of racial profiling, and refused to vacate the premises. Officer Summey testified that despite his repeated attempts to avoid a confrontation, Defendant continued to "be loud and refused to obey a lawful order to disperse." Officer Summey then requested Defendant's identification and told him that he was going to cite him for "refus[ing] to leave and being disruptive." However, Defendant claimed that he did not have any identification and stated that his name was "Mike Beard." Later, officers learned that Defendant's real name was Jeret Phillips. Defendant was arrested for criminal impersonation and disorderly conduct.

Officer Melanie Church testified that on February 13, 2001, she was summoned to 201 Edwards Street on a report of domestic violence. Officer Church testified that when she arrived, Mrs. Amy Phillips reported that she was assaulted by Defendant, her husband. Over defense counsel's objection, the trial court admitted Officer Church's testimony under the excited utterance exception to the hearsay rule. See Tenn. R. Evid. 803(2). Officer Church testified to Mrs. Phillips' account of the assault. Mrs. Phillips stated that she and Defendant argued after she refused to give

him money to purchase cocaine. Then, Defendant became enraged, hit her with his fist, choked her and then pushed her to the ground. The assault occurred at approximately 7:10 p.m. When Defendant left, Mrs. Phillips called the police to report the assault. An officer was dispatched to 922 Dale Street, the location of the assault, but Mrs. Phillips left before the officer arrived, fearing that her husband would return. When Mrs. Phillips arrived at her aunt's home on 201 Edwards Street, she called the police once again. Officer Church stated that she was dispatched to Edwards Street at approximately 7:30 p.m., and arrived at approximately 7:39 p.m. Officer Church further testified that when she arrived, Mrs. Phillips "was upset and appeared to have been crying." Mrs. Phillips also had physical injuries on her cheek, ear, and collarbone area, as well as scratch marks. Officer Church stated that in her opinion, the marks were consistent with bruising from repeated blows with a fist. Officer Church notified other officers to "be on the lookout" for the Defendant, who was arrested within a short period of time. Defendant was charged with assault. Although Mrs. Phillips was present in court, she did not testify.

## ANALYSIS

Defendant contends that the trial court erred by revoking his probation for offenses that the State failed to prove by a preponderance of the evidence, and for offenses that were not alleged in the arrest warrant. We disagree.

In order to revoke a defendant's probation, the trial court must find that the defendant violated the conditions of his probation by a preponderance of the evidence. Tenn. Code Ann. § 40-35-311(e) (Supp. 2001). On appeal, we must review the trial court's decision for an abuse of discretion. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused when the record fails to contain substantial evidence to support the trial court's conclusion that a violation occurred. See id.; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment. See Gregory, 946 S.W.2d at 832; State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

In his first issue, Defendant claims that the trial court erred by revoking his probation for "allegations that the State did not prove by a preponderance of the evidence." Specifically, Defendant claims that the State failed to prove that he was guilty of disorderly conduct, assault, or criminal impersonation. Regarding the offense of disorderly conduct, Defendant challenges the court's finding that he exhibited "violent or threatening behavior" towards the officers.

Disorderly conduct occurs when "a person . . . in a public place and with intent to cause public annoyance or alarm, [e]ngages in fighting or in violent or threatening behavior." Tenn. Code Ann. § 39-17-305(a)(1) (1997). The use of obscenity coupled with an overt act or threat may form the basis of a conviction for disorderly conduct. See State v. Creasy, 885 S.W.2d 829, 831-32 (Tenn. Crim. App. 1994).

We find that Defendant's conduct did not rise to the level of "violent or threatening" and that his "being loud" was not enough. At trial, Officer Summey testified that Defendant was merely

"loud and disruptive" and refused to leave. Likewise, the record fails to contain specific evidence that Defendant threatened the officers, or that the officers felt threatened. See Creasy, 885 S.W.2d at 831-32. Therefore, the State failed to prove by a preponderance of the evidence that Defendant violated his probation by committing the offense of disorderly conduct, as defined by statute.

Defendant argues that the State failed to prove by a preponderance of the evidence that he committed the offense of assault. He contends that the only evidence offered to prove the assault was the hearsay testimony of Officer Church. Defendant further challenges the admissibility of Officer Church's testimony as an excited utterance. See Tenn. R. Evid. 803(2).

Pursuant to Tennessee Rules of Evidence section 803(2), statements "relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition" are admissible as excited utterances. Defendant argues that the statements of Mrs. Phillips were not made to Officer Church while Phillips was "under the stress or excitement caused by the event or condition." In State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993), our Supreme Court held that the test for determining the admissibility of such a statement is spontaneity and logical relation to the event. The declaration must arise while the person is "still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication." Id. However, the time interval is but one consideration and courts must also consider the nature and seriousness of the event or condition; the declarant's appearance, behavior, and outlook; and, the contents of the statement itself, which may indicate the presence or absence of stress. See Neil P. Cohen, et al., Tennessee Law of Evidence, § 8.07[3][d] (4th ed. 2000); State v. Gordon, 952 S.W.2d 817, 820 (Tenn. 1997).

We find that Officer Church's testimony was admissible as an "excited utterance." Officer Church testified that she arrived within thirty minutes of the assault and encountered Mrs. Phillips, who was "very upset and appeared to have been crying." Officer Church also testified that Mrs. Phillips immediately reported that Defendant assaulted her, and had numerous physical injuries consistent with an assault. In light of Mrs. Phillips' appearance, her physical condition, the short time interval between the assault and her statements, and the serious nature of the claim, we find that the statements were admissible as "excited utterances." Defendant also claims that Officer Church's testimony was inadmissible because the declarant, Mrs. Phillips, was available to testify. Unavailability of the declarant is not a necessary prerequisite for admission of testimony as an "excited utterance."

In addition, the court did not err by revoking Defendant's probation on the basis that he committed the offense of criminal impersonation. Defendant claims that because he was not involved in criminal activity, i.e. loitering, providing a false name was not criminal impersonation. However, a person commits the offense of criminal impersonation if he assumes a false identity "with intent to injure or defraud another person." Tenn. Code Ann. §39-16-301 (1997). In this case, the proof showed, by a preponderance of the evidence, that Defendant intended to defraud Officer Summey when he presented himself as "Mike Beard." See State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995).

In his second issue, Defendant argues that the trial court abused its discretion by revoking his probation for uncharged conduct. At the conclusion of the revocation hearing, the trial court revoked Defendant's probation and stated several bases that were proved during the hearing, but not alleged in the probation violation warrant including the offenses of trespass, failure to report as scheduled, and failure to perform community service work. Defendant claims that due process requires notice of all alleged conduct that may be relied upon in a revocation proceeding, and that his due process rights were violated when the court revoked his probation for these offenses.

Our courts have recognized that a probationer has a liberty interest which is protected by minimum standards of due process of law. See State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993); State v. Stubblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). Inherent within these due process rights is the right to written notice of the allegations which form the basis for the proposed probation revocation. See Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761-62, 36 L. Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 2604 (1972). Failure to provide such notice offends due process. See Wade, 863 S.W.2d at 408 (Tenn. 1993). But see State v. Peck, 719 S.W.2d 553, 557 (Tenn. Crim. App. 1986) (finding that while written notice is preferred, actual notice may suffice when there was a rehearing on the probation revocation).

Defendant has failed to show that the trial court violated his due process rights by revoking his probation for uncharged conduct. In fact, the trial court's written order revoking probation, entered on April 26, 2001, listed only the charges enumerated in the violation warrant. In the event that the trial court relied on these additional offenses in error, we find that it was harmless error because the revocation was justified by proof of the allegations contained in the violation warrant. Tenn. R. Crim. P. 52(a). Indeed, failure to report his arrests as required, which was charged and proven, would be sufficient to justify revocation of probation. Defendant is not entitled to relief on this issue.

## CONCLUSION

We affirm the judgement of the trial court.

THOMAS T. WOODALL, JUDGE