IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2008

## STATE OF TENNESSEE v. QUINCY DEANGELO GARDNER

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-391     Cheryl Blackburn, Judge**

_____

**No. M2007-01081-CCA-R3-CD - Filed June 10, 2008**

_____

The Defendant, Quincy DeAngelo Gardner, was convicted of first degree felony murder and sentenced to life imprisonment. On appeal, the single issue presented for our review is whether the evidence was sufficient to support his conviction. He argues that the proof was insufficient to overcome his claims of self-defense and intoxication at the time of the murder. After a review of the evidence in the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Quincy DeAngelo Gardner.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General; for the appellee, State of Tennessee.

### OPINION

#### Factual Background

This case arises from a shooting occurring in front of the Litton Apartments in Nashville. On October 18, 2005, the Defendant shot at a group of people who were sitting on a porch, and an unintended victim was killed. As a result, a Davidson County grand jury indicted the Defendant and codefendant, Cornelius Lavell King, for felony murder during the perpetration of or attempt to perpetrate first degree murder. See Tenn. Code Ann. § 39-13-202(a)(2) (defining first degree felony murder). A jury trial was held on March 5 and 6, 2007.

Viewing the evidence in the light most favorable to the State, the proof at trial showed that, in October 2005, the Defendant, along with his codefendant and Carlos Tillman, went to the Litton

Apartments to obtain marijuana. While there, they had a conversation with a man who later robbed them at gunpoint. As they were exiting the apartment, the man pointed the gun at their heads and ordered them to take off their clothes, stating that he was searching for some lost drugs. The man returned their clothes, taking some cash, and left. The Defendant, who had been observed carrying a black semi-automatic .45-caliber pistol "a couple of times[,]" expressed a desire "to go back and get them . . . ."

On October 18, 2005, the Defendant, along with his brother, Marquis Talley, his codefendant, and a "young lady," drove through Litton Apartments. The group was riding in a black Toyota Corolla that belonged to the Defendant's girlfriend. Mr. Talley stated that when they first went to the apartment complex on October 18, the group was looking for "some weed[.]" He also confirmed that the Defendant and his codefendant "might have been drinking that morning" and "maybe doing some of that powder" cocaine. They additionally "might have" been smoking marijuana "on top of that[.]"

According to Mr. Talley, while driving through the apartment complex, the Defendant saw a man he recognized and then stated, "There go that dude that robbed me." They left and returned to the Defendant's girlfriend's house, which took about ten minutes.

The Defendant and codefendant dropped off Mr. Talley and the young lady at the residence, and the two men then returned to Litton Apartments. The car stopped near a large group of people (approximately eight to ten persons, including children) sitting on the porch talking. The victim, twenty-five-year-old Natalie Nicole Madison, was among this group. The Defendant, who was "ducking down," got out of the vehicle and started shooting.

The Defendant chased one individual, Markeith Calloway, down a hallway, continuing to fire. The Defendant ran behind the building and then returned to the car driven by his codefendant. When he was returning to the car, the Defendant observed the victim lying on the ground. He stopped and asked, "did she get hit, did I hit her[?]" He then got in the car, and they drove away from the apartment complex.

Eyewitnesses, Victoria Sanford and Markeith Calloway, identified the Defendant as the shooter at trial. According to another eyewitness, Nakkia Blanchard, the shooter stated, "nigger, I bet you won't rob nobody else" before he shot. Alfreda Blanchard[1] heard the shooter state similar words: "[Y]ou won't rob me again, nigger, or you won't rob me again . . . ."

About ten minutes after the shooting, the Defendant and codefendant returned to the Defendant's girlfriend's house, and the Defendant stated to Mr. Talley that "he think he done killed somebody[;] . . . he think he shot somebody." The next day, Talley, the Defendant, and codefendant went to Lisa Herlein's apartment in Ashland City, requesting to stay with her. While there, the three

---

[1] At trial, Ms. Blanchard identified the codefendant as the shooter. However, just after the shooting, she was shown a photographic line-up and identified the Defendant as the shooter.

men went for a walk. Mr. Talley stated that the Defendant did take his weapon with him to Ashland City. When the police arrived at Ms. Herlein's apartment, she consented to a search, and officers discovered the Defendant's weapon.

The victim died as a result of a gunshot wound to the right side of her chest. Cartridge cases recovered from the crime scene were matched to the weapon found at Ms. Herlein's apartment in Ashland City.

The Defendant relayed his version of events to the jury:

> I was looking for some marijuana, and I get out the car. The car stopped. I get out the car, and I seen a person that I thought that robbed me. And when I seen him reaching in his coat, I thought he was fixing to pull out the same big old nine millimeter in my face. So I got scared and I threw my hand on my face and I fired a shot.

According to the Defendant, the person who had robbed him threatened to kill him if he ever saw the Defendant again. The Defendant claimed that he only had the gun for protection and chased the individual down the hallway because he was afraid and did not "want him to stop and take a shot back at" him. When he shot the second time, he aimed at the individual's legs. He also stated that he did not realize he had "hit" someone else and that he gave the gun to Mr. Talley.

Following the conclusion of the proof, the jury found the Defendant guilty as charged. The trial court sentenced him to life imprisonment. Following the denial of his motion for a new trial, the Defendant filed a notice of appeal to this Court. The case is now properly before us for our review.

**ANALYSIS**

The Defendant's only issue is whether the evidence is legally sufficient to support his conviction of first degree felony murder. The Defendant challenges the sufficiency of the evidence citing discrepancies between the evidence offered by the State's witnesses and claiming that he acted in self-defense and that he was too intoxicated to form the requisite mental intent for first degree murder.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the

prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Felony murder, for the purposes of this case, is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder . . . ." Tenn. Code Ann. § 39-13-202(a)(2). Tennessee Code Annotated section 39-13-202 also provides that "[n]o culpable mental state is required for conviction under subdivision (a)(2) . . . except the intent to commit the enumerated offenses or acts . . . ." Tenn. Code Ann. § 39-13-202(b).

The underlying felony in this case was attempted first degree murder. First degree murder is defined as "[a] premeditated and intentional killing of another . . . ." Tenn. Code Ann. § 39-13-201(a)(1). A premeditated killing is one "done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). To be premeditated, the intent to kill must have been formed before the act itself, and the accused must be sufficiently free from excitement and passion. Tenn. Code Ann. § 39-13-202(d). An intentional killing requires that the person have the conscious objective or desire to cause the death of the victim. Tenn. Code Ann. § 39-11-106(a)(18); see also State v. Page, 81 S.W.3d 781, 790 app. (Tenn. Crim. App. 2002). Whether premeditation is present is a question of fact for the jury, and it may be determined from the circumstances surrounding the offense. Bland, 958 S.W.2d at 660; State v. Anderson, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992). Our supreme court has noted the following non-exclusive factors that demonstrate the existence of premeditation: the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of an intent to kill, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, and calmness immediately after the killing. Bland, 958 S .W.2d at 660.

Tennessee Code Annotated section 39-12-101 outlines the crime of "criminal attempt." Criminal attempt is when:

> A person . . . acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

The Defendant argues that the evidence showed he shot in self-defense.[2] Thus, he argues that the killing was legally justified. Tennessee Code Annotated section 39-11-611(a) provides as follows:

A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39-11-611(a).

It is well settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the trier of fact. State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). As such, "in the context of judicial review of the jury verdict, in order to prevail, the defendant must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." Clifton, 880 S.W.2d at 743. Moreover, the State has the burden of negating any defense if admissible evidence is introduced supporting the defense. Tenn. Code Ann. § 39-11-201(a)(3). It is clearly within the prerogative of the jury to reject a claim of self-defense. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

---

[2] The jury instructions are not included in the record on appeal. The Defendant asserts in his brief that an instruction on self-defense was given.

The Defendant asserts that, based upon the evidence of self-defense presented at trial, he was legally justified in shooting. He further urges us to consider the discrepancies between the evidence offered by the State's witnesses.

Examining the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to sustain the Defendant's conviction for felony murder. The proof showed that the killing of the victim occurred as a result of the Defendant's shooting into a group of people he believed included the man who had previously robbed him. According to testimony presented at trial, the Defendant was riding through the apartment complex and observed the man he believed had robbed him on a prior occasion. Thereafter, he returned to the apartments in a car driven by his codefendant and jumped out of the vehicle, made statements of revenge, and starting firing upon the crowd on the porch. He chased Mr. Calloway down the hallway, shooting again. Prior to the shooting, the Defendant stated that he desired to return to the apartment complex to exact revenge upon the robber. Following the shooting, the Defendant took his weapon and went to Ashland City. The jury heard testimony surrounding the circumstances of the shooting and from two eyewitnesses that the Defendant was the shooter. As noted above, this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236. Furthermore, questions about the credibility of witnesses, the weight and value of the evidence, as well as factual issues raised by the evidence are to be resolved by the trier of fact. Id.

The jury was not obligated to accept the Defendant's testimony as to self-defense. The issue of self-defense in a murder prosecution is always a question of fact to be determined by the trier of fact. In summary, there was ample evidence to support the jury's finding in this case that the killing occurred during the attempt to perpetrate the first degree murder of Markeith Calloway, whom the Defendant apparently believed to be the man who had previously robbed him at gunpoint.

Finally, the Defendant asserts in his brief that Mr. Talley's testimony provided sufficient evidence of voluntary intoxication. Our Code provides that, while voluntary intoxication is not a defense to prosecution for an offense, evidence of such intoxication may be admitted to negate a culpable mental state. Tenn. Code Ann. § 39-11-503(a); see also State v. Phipps, 883 S.W.2d 138, 148 (Tenn. Crim. App. 1994).

Because the Defendant has failed to include the jury instructions in the record on appeal, we cannot determine whether an instruction on voluntary intoxication was given. "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). It is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b).

Moreover, whether a defendant is too intoxicated to form the requisite mental state is a question reserved for the jury. State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995). The jury heard Mr. Talley's testimony and obviously concluded that the Defendant was not so intoxicated

as to be unable to form the required mental state. We conclude that the evidence was sufficient to establish the certainty of guilt of the accused.

## CONCLUSION

Based upon our review of record, we conclude that the evidence is sufficient to support the Defendant's conviction for first degree felony murder. The judgment of the Davidson County Criminal Court is affirmed.

_____
DAVID H. WELLES, JUDGE